Jovencio F. MADARANG; J.F. Madarang & Associates, D.D.S., a Professional Corporation, Plaintiffs–Appellees,

v.

Mariano R. BERMUDES, individually and as Executive Director of Commonwealth Health Planning and Development Agency; Jose T. Villagomez, individually and as a Director of the Department of Public Health and Environmental Services, and the Commonwealth Health Coordinating Council, Defendants–Appellants.

No. 88–2608.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1989.

Decided Nov. 9, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc Jan. 19, 1990.

David A. Webber, Asst. Atty. Gen., Saipan, M.P., for defendants-appellants.

Reynaldo O. Yana, Saipan, M.P., for plaintiffs-appellees.

Before TANG, CANBY and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are asked to decide whether the Certificate of Need ("CON") regulations of the Commonwealth of the Northern Mariana Islands ("CNMI"), as applied to Dr. Madarang, violate the fourteenth amendment.

I

J.F. Madarang and Associates, D.D.S. ("Dr. Madarang" or "appellant") filed a complaint in the United States District Court for the Northern Mariana Islands

claiming that his application to establish a dental clinic in the CNMI had been denied in violation of the equal protection and due process clauses of the fourteenth amendment, and various other laws and statutes. Dr. Madarang's complaint was based upon the CNMI's Certificate of Need regulations which require health facilities desiring to make (1) any capital expenditures over $50,000, or (2) any new health services regardless of cost, among other changes, to receive permission to make such changes from the CON panel. Dr. Madarang's duly filed application for a CON was rejected by the government of CNMI whereupon he filed this action pursuant to 48 U.S.C. § 1694(c) alleging federal question jurisdiction under 28 U.S.C. § 1331.

After a brief non-jury trial, the district court made the following pertinent findings of fact:

11. In the CNMI, the capital expenditure figure which triggers the requirement of obtaining a Certificate of Need is $50,000, not the federal figure of $400,000 ... No legislative history explains or justifies this charge.

\*　　\*　　\*　　\*　　\*　　\*

15. On or about June 25, 1986, plaintiffs submitted a "Certificate of Need" (CON) application to the Commonwealth Health Planning and Development Agency (CHPDA).

\*　　\*　　\*　　\*　　\*　　\*

17. CHPDA made a formal recommendation to the Commonwealth Health Coordinating Council (CHCC) that the application be denied.

18. After a public hearing, attended by plaintiff Madarang and his attorney, the application was denied.

The court also made the following conclusions of law:

1. The United States Supreme Court has recognized the inherent friction between pervasive federal regulatory schemes and anti-trust laws and personal freedom. *See, e.g., National Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City,* [452 U.S. 378, 101 S.Ct. 2415, 69 L.Ed.2d 89] (1981).

2. Here, the U.S. Congress sought to achieve certain goals in the health care field by enacting the National Health Planning and Resources Development Act of 1974, while at the same time making it as least restrictive as possible.

3. The Fourteenth Amendment to the United States Constitution applies fully in the Commonwealth of the Northern Mariana Islands. *Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America,* § 501(a). [*See* Joint Resolution of March 24, 1976, Pub.L. No. 94–241, 90 Stat. 263, *reprinted in* 48 U.S.C. § 1681 note (1982).]

4. "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Truax v. Raich,* [239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131] (1915). *See also Board of Regents of State Colleges v. [R]oth,* [408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548] (1972).

5. Because the right to pursue an occupation is a fundamental right protected by the 14th Amendment it is subject to strict judicial review and any statute which discriminates can only be justified by a compelling state interest. [Citing] *San Antonio Independent School District v. Rodriguez,* [411 U.S. 1, 19, 93 S.Ct. 1278, 1289, 36 L.Ed.2d 16] (1973).

6. The CNMI's $50,000 capital expenditure figure, which triggers the requirement of a "certificate of need," is an impermissibly restrictive law, the effect of which is to preserve and extend the existing monopolies and not to control the allocation of scarce health resources. Under the current CNMI law it would be nearly impossible for a new health care provider to open here. Every time an application was received the entrenched health care providers could respond, as was done here, that they either provided the service already or could and would expand to provide it. The statute is so restrictive that it cannot be justified by the state interest of maximizing health

care resources and is, therefore, unconstitutional.

The court held that "[t]he CNMI Certificate of Need statute is struck down as unconstitutional and judgment is granted in favor of plaintiffs."

Bermudes and the government of CNMI timely appeal.

## II

We have previously held that the fourteenth amendment applies to the CNMI. *Fleming v. Department of Public Safety*, 837 F.2d 401, 408–09 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 222, 102 L.Ed.2d 212 (1988). However, the district court's application of the equal protection clause of the fourteenth amendment to the facts in this case is flawed. The fourteenth amendment states, in pertinent part, that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. We have held that "[t]he first step in equal protection analysis is to identify the state's classification of groups." *Country Classic Dairies v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir.1988). The district court made no such analysis in this case. The only finding with respect to this issue is in paragraph 11 of the findings of fact which compares triggering of the CON application requirements with a different threshold under federal law. The CON regulations distinguish, among other classifications, between those who spend less than $50,000 to establish a health care facility and those who would spend more. The CON regulation also distinguished between those who were currently providing health care in the Northern Mariana Islands and those who wanted to provide such services. Madarang does not contend that the statute creates any suspect classifications.

■ "The next step in equal protection analysis [is] ... to determine the level of scrutiny." *Country Classic*, 847 F.2d at 596. As stated in *Country Classic*, "[t]he Supreme Court has held that the right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause." *Id.* (citing *City of New Orleans*

*v. Dukes*, 427 U.S. 297, 303–05, 96 S.Ct. 2513, 2516–18, 49 L.Ed.2d 511 (1976) (per curiam). As a result, "[t]his court may 'presume the constitutionality of the ... discriminations and require only that the classification challenged be rationally related to a legitimate state interest.'" *Id.*

This court has stated that "in the area of economics and social welfare, legislative classification satisfies requirements of equal protection if it has some 'reasonable basis' and if any state of facts can be conceived to justify it." *Christy v. Hodel*, 857 F.2d 1324, 1331–32 (9th Cir.1988).

■ The Commonwealth has a legitimate interest in preventing the establishment of unneeded facilities. The parties themselves stipulated that "[t]here is no need for a third dental clinic on Saipan, as the term 'need' is used in connection with the Certificate of Need." The various regulations do not define "need" except insofar as listing fourteen criteria by which the CON members are to judge whether a CON should be issued. Certificate of Need Manual, Commonwealth Register Vol. 5 No. 6 at 2265–66 (1983). These criteria all relate to determining whether or not CNMI citizens' health needs would be better served by the new or expanded facility. The CON regulations are rationally related to preventing "duplication of facilities and services and to encourage the development of such facilities where they are needed" in the CNMI. *Id.* at 2215. Enforcement of the CON regulations does not violate the equal protection clause of the fourteenth amendment.

## III

■ Dr. Madarang also claims that the rejection of his CON application violated the due process clause. No evidence suggests that he was denied procedural due process: the district judge made no findings on this matter and nothing in the records suggests such a violation. Similarly, Dr. Madarang claims that a substantive due process violation occurred. The nature of the purported violation of substantive due process is not specified either by Ma-

darang or by the district court, and none is apparent from the record. The days when courts regularly struck down economic legislation on substantive due process grounds, as in *Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), have long since passed. It is abundantly clear today that economic regulation of professional services need not violate substantive due process. *See North Dakota State Bd. of Pharmacy v. Snyder's Drug Stores*, 414 U.S. 156, 164–67, 94 S.Ct. 407, 412–14, 38 L.Ed.2d 379 (1973) (previous authority restricting rights of states to regulate drugstore business discredited); *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963) (no violation of due process or equal protection to abolish, except as practiced by lawyers, business of debt adjusting). In light of the clear position of the Supreme Court for over fifty years, the ruling of the district court cannot stand.

REVERSED and REMANDED.